IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**TANYA L. L.,**[1]                                    **3:20-cv-00078-BR**

        **Plaintiff,**                           **OPINION AND ORDER**

**v.**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

**KEVIN KERR**
Schneider Kerr & Robichaux
P.O. Box 14490
Portland, OR  97293
(503) 255-9092

        Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

---

[1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.  Where applicable, this Court uses the same designation for the nongovernmental party's immediate family member.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**DAVID J. BURDETT**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2522

        Attorneys for Defendant

**BROWN, Senior Judge.**

     Plaintiff Tanya L. L. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's application for continuing Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

     The Commissioner has filed a Motion (#16) to Remand in which he requests the Court to remand this matter for further administrative proceedings. In Plaintiff's Reply Brief (#18) she asks the Court to remand this matter for the payment of benefits.

     For the reasons that follow, the Court **REVERSES** the decision of the Commissioner, **DENIES** the Commissioner's Motion to Remand for further administrative proceedings, and **REMANDS** this matter for the immediate calculation and payment of

2 - OPINION AND ORDER

benefits.

## ADMINISTRATIVE HISTORY

On September 19, 2012, the Social Security Administration found Plaintiff was disabled beginning on December 8, 2011. Tr. 13, 99.[2]  This decision is referred to as the "comparison point decision" (CPD).[3]

On September 9, 2016, Oregon Disability Determination Services (DDS) found Plaintiff was no longer disabled.  Tr. 13, 99.  The DDS determination was upheld on reconsideration after a disability hearing by a state-agency Disability Hearing Officer. Tr. 13, 95-108.

On June 15, 2018, Plaintiff filed a request for a hearing before an Administrative Law Judge (ALJ).  Tr. 109.  An ALJ held a hearing on July 23, 2019.  Tr. 30-69.  Plaintiff and a vocational expert (VE) testified at the hearing.  Plaintiff was represented by an attorney at the hearing.

---

[2]  Citations to the official Transcript of Record (#12) filed by the Commissioner on July 15, 2020, are referred to as "Tr."

[3]  The CPD is the most recent favorable medical decision finding the claimant was disabled and is used for purposes of determining the claimant's continuing disability.  Programs Operations Manual Systems (POMS), DI 28035.015.

On August 12, 2019, the ALJ issued an opinion in which he found Plaintiff's disability ended on September 9, 2016; that Plaintiff has not been disabled since September 9, 2016; and, therefore, that Plaintiff is not entitled to benefits.  Tr. 13-25.  Plaintiff requested review by the Appeals Council.

On November 9, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the final decision of the Commissioner.  Tr. 1-3.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On January 13, 2020, Plaintiff filed a Complaint in this Court seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was born on September 20, 1979.  Tr. 23, 70. Plaintiff was 36 years old on September 9, 2016, the date the DDS determined her disability ended.  Tr. 23.  Plaintiff has past relevant work experience as a nurse's assistant.  Tr. 23.

At the time of the CPD Plaintiff was found to have the following impairments:  degenerative-disc disease, dermatitis, and inflammatory arthritis.  Tr. 15.  In the current decision the ALJ found Plaintiff has had the following medically determinable impairments since September 9, 2016:  psoriatic

4 - OPINION AND ORDER

arthritis, right carpal-tunnel syndrome, history of psoriasis, peripheral neuropathy, Post-Traumatic Stress Disorder (PTSD), major depressive disorder, situational anxiety, and a history of polysubstance dependence.  Tr. 15.

Except as noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 18-23.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's testimony, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its

judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## CONTINUING DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

To determine whether a claimant continues to be disabled after a determination by DDS that the claimant is no longer disabled, the Commissioner must follow a seven-step evaluation process.  20 C.F.R. § 416.994.

At Step One the claimant's disability continues if the Commissioner determines the claimant has an impairment or combination of impairments that meet or medically equals the criteria of an impairment(s) enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).  20 C.F.R. §§ 416.920(d), 416.925, 416.926, 416.994(b)(5)(i).

At Step Two the Commissioner must determine whether the claimant has had "medical improvement."  20 C.F.R. § 416.994(b)(5)(ii).  Medical improvement is any decrease in the medical severity of the impairment(s) as established by improvement in symptoms, signs, and/or laboratory findings.  20 C.F.R. § 416994(b)(1)(ii).  If the Commissioner finds the claimant has had medical improvement, the Commissioner proceeds

to Step Three.  If the Commissioner finds the claimant has not had medical improvement, the Commissioner proceeds to Step Four.

At Step Three the Commissioner determines whether there has been medical improvement in the claimant's ability to work.  20 C.F.R. § 416.994(b)(5)(iii).  In this instance medical improvement means the claimant's capacity to perform basic work activities has increased.  20 C.F.R. § 416.994(b)(1)(iii).  If the Commissioner finds there is medical improvement in the claimant's ability to work, the Commissioner proceeds to Step Five.

At Step Four the Commissioner must determine whether an exception to medical improvement applies.  20 C.F.R. § 416.995(b)(5)(vi).  If the Commissioner finds an exception under 20 C.F.R. § 416.994(b)(3) applies, the Commissioner proceeds to Step Five.  If the Commissioner finds an exception under 20 C.F.R. § 416.994(b)(4) applies, the claimant is no longer disabled.  If the Commissioner determines neither exception applies, the claimant's disability continues.

At Step Five the Commissioner must determine whether all of the claimant's current impairments in combination are severe. 20 C.F.R. § 416.994(b)(5)(vi).  If all of the claimant's current impairments in combination do not significantly limit the

claimant's ability to perform basic work activities, the claimant is no longer disabled.  If the claimant's impairments limit claimant's ability to perform basic work activities, the Commissioner proceeds to Step Six.

At Step Six the Commissioner must assess the claimant's residual function capacity (RFC) to determine whether the claimant can perform past relevant work.  20 C.F.R. § 416.994(b)(5)(vi).  The claimant is not disabled if she has the RFC to perform her past relevant work.  If the claimant cannot perform her past relevant work, the Commissioner proceeds to Step Seven.

At Step Seven the Commissioner must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 416.994(b)(5)(vii).  The Commissioner must show a significant number of jobs exist in the national economy that the claimant can perform.  If the Commissioner meets this burden, the claimant is not disabled.

## ALJ'S FINDINGS

The ALJ found Plaintiff has had the following medically determinable impairments since September 9, 2016:  psoriatic arthritis, right carpal-tunnel syndrome, history of psoriasis,

peripheral neuropathy, Post-Traumatic Stress Disorder (PTSD), major depressive disorder, situational anxiety, and a history of polysubstance dependence.  Tr. 15.

At Step One the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or equals one of the Listed Impairments.  Tr. 15.

At Step Two the ALJ found Plaintiff has had medical improvement since September 9, 2016.  Tr. 17.

At Step Three the ALJ found Plaintiff's ability to work medically improved by September 9, 2016, and Plaintiff's impairments no longer meet or medically equal the listings of the CPD determined in 2012.  Tr. 17.  Pursuant to the Regulations the Commissioner proceeded to Step Five.

At Step Five the ALJ determined Plaintiff continues to have a "severe" impairment or combination of impairments since September 9, 2016.  Tr. 17.

At Step Six the ALJ determined Plaintiff has the RFC to perform light work with the following limitations:  can reach, handle, finger, feel, push, and pull with both arms; can only occasionally climb ladders, ropes, or scaffolds; can only occasionally balance, kneel, crouch, drawl, stoop, and bend; must avoid exposure to loud noise, vibration, and hazards such

as dangerous machinery and unprotected heights; can only
understand, remember, and carry out short, simple routine job
instructions consistent with unskilled work; should not interact
with the public; can only have occasional superficial
interaction with coworkers and supervisors; and needs a "static"
work environment with few changes in work routines and settings.
Tr. 17-18.  The ALJ also found Plaintiff has been unable to
perform her past relevant work as a nurse's assistant since
September 9, 2016.  Tr. 23.

At Step Seven the ALJ determined Plaintiff is able to do
other work that exists in the national economy such as laundry-
sorter, garment-bagger, inspector/hand-packager.  Tr. 23-24.
Accordingly, the ALJ found Plaintiff's disability ended on
September 9, 2016, and she has not been disabled since that
date.  Tr. 24.


<u>**DISCUSSION**</u>

Plaintiff contends the ALJ erred when he (1) failed at Step
One to conduct "an adequate evaluation," to give *res judicata*
effect to the prior determination of disability, and to "meet
his burden"; (2) failed at Step Two to establish Plaintiff's
medical improvement since the CPD in 2012; (3) failed to provide

11 - OPINION AND ORDER

legally sufficient reasons for rejecting the medical opinions of
Erum Khaleeq, M.D., an examining physician, and Neal Berner,
M.D., a state-agency reviewing physician; (4) failed to provide
legally sufficient reasons for rejecting the lay-witness
testimony; (5) failed to provide legally sufficient reasons for
discounting Plaintiff's symptom testimony; and (6) failed to
conduct an adequate analysis at Step Seven.

The Commissioner does not specifically contest Plaintiff's
assertions of error.  The Commissioner, however, argues only
remand for further administrative proceedings is necessary to
allow the ALJ to "reconsider the medical and testimonial
evidence."

## I. **The ALJ erred in his evaluation of the medical opinions of Drs. Khaleeq and Berner.**

Plaintiff contends the ALJ failed to provide legally
sufficient reasons for rejecting the medical opinions of Erum
Khaleeq, M.D., an examining psychiatrist, and Neal Berner, M.D.,
a state-agency reviewing physician.  The Commissioner did not
specifically contest these assertions of error.

### A. **Standards**

The Court notes the regulations regarding evaluation
of medical evidence have been amended, and several of the prior
Social Security Rulings, including SSR 96-2p, have been

rescinded for claims protectively filed after March 27, 2017.
The new regulations provide the Commissioner "will no longer
give any specific evidentiary weight to medical opinions; this
includes giving controlling weight to any medical opinion."
*Revisions to Rules Regarding the Evaluation of Medical Evidence*
(*Revisions to Rules*), 2017 WL 168819, 82 Fed. Reg. 5844, at
5867-68 (Jan. 18, 2017). *See* 20 C.F.R. § 404.1520c(a). Instead
the Commissioner must consider all medical opinions and
"evaluate their persuasiveness" based on "supportability" and
"consistency" using the factors specified in the regulations.
20 C.F.R. § 404.1520c(c). Those factors include
"supportability," "consistency," "relationship with the
claimant," "specialization," and "other factors." *Id.* The
factors of "supportability" and "consistency" are considered to
be "the most important factors" in the evaluation process. *Id.*
*See also Revisions to Rules*, 82 Fed. Reg. 5844.

In addition, the amended regulations change the way
the Commissioner should articulate his consideration of medical
opinions.

> First, we will articulate our consideration of
> medical opinions from all medical sources
> regardless of whether the medical source is an
> AMS [Acceptable Medical Source]. Second, we will
> always discuss the factors of supportability and
> consistency because those are the most important

> factors.  Generally, we are not required to
> articulate how we considered the other factors
> set forth in our rules.  However, when we find
> that two or more medical opinions . . . about the
> same issue are equally well-supported and
> consistent with the record but are not exactly
> the same, we will articulate how we considered
> the other most persuasive factors.  Third, we
> added guidance about when articulating our
> consideration of the other factors is required or
> discretionary.  Fourth, we will discuss how
> persuasive we find a medical opinion instead of
> giving a specific weight to it.  Finally, we
> will discuss how we consider all of a medical
> source's medical opinions together instead of
> individually.

*Revisions to Rules*, 82 Fed. Reg. 5844.

Although the amended regulations eliminate the
"physician hierarchy," deference to specific medical opinions,
and assigning "weight" to a medical opinion, the ALJ must still
"articulate how [he/she] considered the medical opinions" and
"how persuasive [he/she] find[s] all of the medical opinions."
20 C.F.R. § 404.1520c(a) and (b)(1).  The ALJ also is required
to "explain how [he/she] considered the supportability and
consistency factors" for a medical opinion.  20 C.F.R.
§ 404.1520c(b)(2).  Accordingly, to determine the persuasiveness
of a medical opinion the court must evaluate whether the ALJ
properly considered the factors as set forth in the amended
regulations.

**B.    Analysis**

    **1.    Dr. Khaleeq**

On August 7, 2016, Dr. Khaleeq completed a mental-health assessment of Plaintiff.  Tr. 277-81. Dr. Khaleeq diagnosed Plaintiff with PTSD and adjustment disorder with depressed mood.  Tr. 280.  Dr. Khaleeq opined Plaintiff can perform simple and repetitive tasks; "may" get distracted doing detailed and complex tasks; "might" have difficulty with supervisors, coworkers, and the public; "may" take some time performing work activities on a consistent basis or maintaining attendance at work; and cannot complete a normal workday/workweek due to her current psychiatric condition. Dr. Khaleeq also opined Plaintiff's current psychiatric condition would be aggravated by stress in the workplace. Tr. 280-81.

The ALJ concluded Dr. Khaleeq's opinion was "unpersuasive" on the grounds that

> although the record demonstrates that
> [Plaintiff] would be capable of performing
> simple tasks, there is no evidence to
> support Dr. Khaleeq's claim that
> [Plaintiff's] psychiatric diagnoses would
> preclude all work activity because a lack of
> work history does not mean she is precluded
> from ever performing any work at all.
> Furthermore, his opinion is not consistent
> with [Plaintiff's] lack of treatment since

she was approved for benefits or since she
[stopped] receiving benefits.

Tr. 20.  The ALJ, however, did not explain how Dr. Khaleeq's
opinion is inconsistent with Plaintiff's alleged lack of
treatment nor did the ALJ provide specific evidence to show that
Plaintiff's medical condition had improved or that she is no
longer disabled.  20 C.F.R. § 404.1594.  Although Dr. Khaleeq
qualified his statements regarding Plaintiff's limitations by
stating she "may" get distracted, "might" have difficulty, or
"may" take time to perform tasks, these qualified statements do
not constitute clear and convincing evidence that Plaintiff's
condition has improved.

In addition, the ALJ interpreted Dr. Khaleeq's
opinion to mean that Plaintiff was "precluded from all work,"
but, on the contrary, Dr. Khaleeq merely found Plaintiff is
unable to "complete a normal workday/workweek" because of her
limitations.

Based on this record the Court concludes the ALJ
erred when he failed to provide legally sufficient reasons
supported by substantial evidence in the record for discounting
Dr. Khaleq's assessment of Plaintiff's limitations.

**2.   Dr. Berner**

On September 19, 2012, Dr. Berner reviewed

Plaintiff's medical records and concluded the "severity of one
or more of the [medically determinative impairments] meets
current listing criteria 14.09-A2 [for] Inflammatory Arthritis,"
and, therefore, Plaintiff is disabled.  Tr. 84-86.

Although the ALJ found Plaintiff's psoriatic
arthritis "is well controlled with Humira and her back pain is
described as mild in nature" (Tr. 22), the ALJ did not
specifically address Dr. Berner's determination that Plaintiff
met the Listing criteria for Inflammatory Arthritis nor
Dr. Berner's conclusion that Plaintiff, therefore, is disabled.
In fact, the ALJ merely stated he had reviewed the prior
administrative medical findings made by the state-agency
consultants, which included Dr. Berner, and found their findings
to be consistent with the evidence.  Tr. 22-23.

Based on this record the Court concludes the ALJ
erred when he failed to provide legally sufficient reasons
supported by substantial evidence in the record for discounting
Dr. Berner's assessment.

In summary, the Court concludes the ALJ erred in his
evaluation of the medical opinions of Drs. Khaleeq and Berner.

**II.  The ALJ erred when he discounted Plaintiff's subjective
     testimony.**

Plaintiff contends the ALJ failed to provide legally

17 - OPINION AND ORDER

sufficient reasons for discounting Plaintiff's symptom
testimony.

As noted, the Commissioner did not challenge Plaintiff's
assignment of error and asserted only that remand was necessary
in order to "further evaluate . . . non-medical opinion
evidence."

**A.   Standards**

The ALJ engages in a two-step analysis to determine
whether a claimant's testimony regarding subjective pain or
symptoms is credible.  "First, the ALJ must determine whether
the claimant has presented objective medical evidence of an
underlying impairment 'which could reasonably be expected to
produce the pain or other symptoms alleged.'"  *Garrison v.
Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter
v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The
claimant need not show his "impairment could reasonably be
expected to cause the severity of the symptom [he] has alleged;
[he] need only show that it could reasonably have caused some
degree of the symptom."  *Garrison*, 759 F.3d at 1014 (quoting
*Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A
claimant is not required to produce "objective medical evidence
of the pain or fatigue itself, or the severity thereof."  *Id*.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15. *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**B.   Analysis**

At the hearing Plaintiff testified she continued to be disabled by psoriatic arthritis and ongoing mental-health issues. Tr. 38. She stated she is unable to maintain employment due to PTSD; problems with her knees, lower back, hips, and wrists; and her anxiety around people. Tr. 39.

Plaintiff testified she suffers from depression, experiences panic attacks, and has flashbacks and nightmares due to trauma. Tr. 40, 43, 46.

The ALJ discounted Plaintiff's testimony on the ground that it was "not entirely consistent with the objective medical and other evidence" in the record.  Tr. 19.  The ALJ concluded the extent of limitations alleged by Plaintiff was not supported by the medical findings, the findings from medical examinations were relatively normal, Plaintiff's psoriatic arthritis is controlled by medication, and Plaintiff reported she was "doing okay."  Tr. 19-22.

Plaintiff contends the ALJ's findings are not supported by substantial evidence in the record.  For example, Plaintiff asserts even though there are limited medical records, the treatment notes and examination findings reflect Plaintiff frequently complains about worsening low-back pain and continues to suffer from psoriatic arthritis.  In October 2016 Plaintiff had increasing low-back pain and bilateral-knee pain.  Tr. 213. In January 2018 Plaintiff was assessed with psoriatic arthropathy, major depressive disorder, chronic pain syndrome, and anxiety attacks.  Tr. 317.  Similar findings were made in November 2018.  Tr. 333.  Plaintiff testified she had difficulty

leaving her home, had frequent panic attacks, and constant feelings of being overwhelmed that resulted in her inability to consistently attend mental-health counseling.  Tr. 39-40, 43-44. Plaintiff also asserts the record reflects her attempts to seek treatment in 2018 and 2019, and her providers documented Plaintiff's symptoms from various traumatic events.  Tr. 355-69.

On this record the Court concludes the ALJ erred when he discounted Plaintiff's subjective symptom testimony and failed to provide legally sufficient reasons supported by substantial evidence in the record for doing so.

## III. The ALJ failed to provide legally sufficient reasons for discounting the statements of the lay witnesses.

Plaintiff contends the ALJ failed to provide legally sufficient reasons for rejecting the lay-witness testimony of Amanda R., Plaintiff's sister, and Kya L., Plaintiff's daughter.

Again, the Commissioner did not respond specifically to Plaintiff's assignment of error in this regard.

### A.   Standards

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."  *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).  The ALJ's reasons for

rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir. 2006).  Germane reasons for discrediting a lay-witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  *See also Williams v. Astrue*, 493 F. App'x 866 (9th Cir. 2012).

The ALJ is not required, however, "to discuss every witness's testimony on a[n] individualized, witness-by-witness basis.  Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."  *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).  Although the ALJ must consider evidence from nonmedical sources pursuant to § 404.1520c(d) of the amended regulations, the ALJ is "not required to articulate how [he] consider[s] evidence from nonmedical sources" and he does not have to use the same criteria as required for medical sources.  The amended regulations, however, do not eliminate the need for the ALJ to articulate his assessment of the lay-witness statements.

**B.    Analysis**

On June 4, 2016, Amanda R. provided a Third-Party
Function report regarding Plaintiff's limitations.  Tr. 195-202.
She noted Plaintiff experiences severe joint pain from writing,
typing, cleaning, bending, or sitting for any length of time.
Tr. 195.  Plaintiff is unable to sleep due to back pain; needs
reminders to take medication; is unable to cook big meals;
cannot complete yard work or household repairs; restricts her
household chores due to pain; experiences pain when sitting in
one position for extended periods; has some anxiety; and cannot
lift, bend, kneel, climb stairs, complete tasks, or follow
instructions.

In June 2019 Kya L. provided a statement regarding her
mother's limitations.  Tr. 232-33.  She indicated Plaintiff has
dealt with major depression, stays home and isolates herself due
to her psoriasis, is frequently tearful due to severe pain,
needs assistance for household chores, and cannot sit in one
position for longer than 15 minutes.

The ALJ ultimately concluded these lay-witness
statements are "neither inherently valuable or persuasive when
compared to the objective medical evidence" (Tr. 22), but he did
not provide any assessment of the lay-witness statements.

As noted, although the ALJ is not required to use the same factors as required for medical sources, he is still required to articulate his analysis and his reasons for discounting such statements. *See Joseph R. v. Comm'r of Soc. Sec.*, No. 3:18-cv-01779-BR, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019).

On this record the Court concludes the ALJ erred when he failed to articulate his reasons for discounting the lay-witness statements.

## IV.  The ALJ failed to conduct an adequate analysis at Step Seven.

Plaintiff contends the ALJ failed to conduct an adequate analysis at Step Seven regarding Plaintiff's limitations.

As noted, at Step Seven the Commissioner must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 416.994(b)(5)(vii).

Based on Plaintiff's limitations Dr. Khaleeq opined Plaintiff would not be able to complete a normal workday or workweek.  At the hearing the VE testified a person would be unable to sustain full-time employment if they missed more than one day per month on a consistent basis.  Tr. 63.  In determining at Step Seven Plaintiff's ability to perform other work, the ALJ, however, improperly rejected Dr. Khaleeq's

medical opinion and did not consider the VE's testimony.

Accordingly, the ALJ erred at Step Seven when he determined Plaintiff could maintain regular and continuous employment.

## REMAND

As noted, the Commissioner requests the court to remand this matter for further administrative proceedings.  The Commissioner contends on remand the ALJ should properly evaluate Plaintiff's symptom testimony, reconsider Plaintiffs' RFC, and properly evaluate the opinions of the medical providers and the lay witnesses.

Plaintiff contends there is not any dispute that requires further administrative proceedings, and the Court should remand for the payment of benefits.

## I.   Standards for Remand

The decision whether to remand for further proceedings or for payment of benefits generally turns on the likely utility of further proceedings.  *Carmickle*, 533 F.3d at 1179.  The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for

determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.*  The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *Id.* at 1178 n.2.

## II.  Analysis

The Commissioner contends the record "as a whole" is not free from conflicts, ambiguities, or gaps; all factual issues have not been resolved; and Plaintiff's entitlement to benefits is not clear.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014)(when considering whether further administrative proceedings would be helpful, the court determines "whether the record as a whole is free from conflict, ambiguities, or gaps, [and] whether all factual issues have been resolved.").  The Commissioner, however, also contends the ALJ

cited multiple records that cast doubt as to whether Plaintiff
continued to be disabled after September 9, 2016.  For example,
the ALJ pointed out that Plaintiff reported the drug Humira
worked for her arthritic pain as recently as November 2018
(Tr. 21, 333); Plaintiff was discharged from treatment for her
mental impairments because she did not respond to "an engagement
letter" in January 2019 (Tr. 22, 367-69); and Dr. Khaleeq noted
Plaintiff's history with addiction and stated Plaintiff "claims
to be in remission from using methamphetamine" (Tr. 277-80).

        The Commissioner, nevertheless, did not specifically
contest any of the errors alleged by Plaintiff nor identify any
evidence in the record that specifically disputes those alleged
errors.  The Commissioner only concedes the ALJ erred by failing
"to provide a full enough discussion of the lay witness reports
and the opinion of state agency physician Dr. Berner," but the
Commissioner did not specifically dispute Dr. Khaleeq's opinion
that Plaintiff would not be able to complete a normal workday or
workweek.  Tr. 280-81.  Moreover, the Commissioner's other
arguments do not cast "serious doubt" on whether Plaintiff is
disabled.

     Plaintiff, on the other hand, points to her psychotherapy
records in August 2018 that indicate she has

> Recurrent, involuntary, and intrusive distressing
> memories of traumatic events from [her] past; . . .
> Marked physiological reactions to internal or external
> cues that symbolize or resemble an aspect of the
> traumatic events; . . . Markedly diminished interest
> or participation in significant activities after the
> events; Feelings of detachment or estrangement from
> others; Persistent inability to experience positive
> emotions; Irritable behavior and angry outbursts;
> Reckless or self-destructive behavior; Hypervigilance;
> Exaggerated startle response; Difficulty
> concentrating; Sleep disturbance; for more than 1
> month after events.

Tr. 358-59.

Based on the current record and specifically Dr. Khaleeq's assessment of Plaintiff's limitations, the Court concludes consideration of the record as a whole establishes that if this evidence is credited the ALJ would be required to find that Plaintiff continued to be disabled after September 9, 2016, and, therefore, to continue benefits to Plaintiff.

Accordingly, the Court remands this matter for the immediate calculation and payment of benefits.


**CONCLUSION**

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four

of 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 16th day of March, 2021.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge